IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHRISTOPHER P. KELSAY,

        Plaintiff,

v.

DEPUTY TINSLEY WISER, JANE DOE, LANE COUNTY, and DOES 1–11,

        Defendants.

Case No. 6:25-cv-00219-MC

OPINION AND ORDER

_____

MCSHANE, Judge:

      Plaintiff Christopher Kelsay brings this action against Defendants Tinsley Wiser, Jane Doe, and Lane County, asserting various 42 U.S.C. § 1983 and state law claims. First Am. Compl. at 1, ECF No. 4. Before the Court is Defendants' Motion to Dismiss for failure to state a claim for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. Dismiss at 1, ECF No. 10. Because Plaintiff's claims for Municipal Liability and Negligence rely on bare legal conclusions and not specific factual allegations, Defendants' motion is GRANTED as to claims four, and eight. Because Plaintiff's claim for assault does not specify which allegations support this claim and generally leaves Defendants unable to adequately defend themselves, Defendants' motion is GRANTED as to claim five. Plaintiff is granted leave to amend.

1

## BACKGROUND

While working as a rideshare driver on a snowy morning in Eugene, Oregon, Plaintiff received a ride request at approximately 2:15 A.M. Am. Compl. at ¶¶ 12–14, 17. Due to the snow on the ground, Plaintiff "turned the steering wheel slightly and then straightened out the vehicle in order to gauge [its] traction." *Id.* at ¶ 18. As Plaintiff drove, a police SUV "rapidly approached his vehicle from behind" and tailgated "[P]laintiff's vehicle in an intimidating manner at a short distance behind [P]laintiff's vehicle." *Id.* at ¶¶ 19–20. Defendant Wiser drove the SUV while Defendant Doe rode in the passenger seat. *Id.* at ¶¶ 6, 20. After "tailgating [P]laintiff's vehicle for a prolonged period of time," Defendant Wiser activated the vehicle's emergency lights and Plaintiff pulled his vehicle off the road and into a driveway. *Id.* at ¶¶ 20, 28–29. Defendant Wiser then ordered Plaintiff to pull forward, and Plaintiff complied. *Id.* at ¶¶ 30–31.

Defendant Wiser exited the police car and knocked on the window of Plaintiff's vehicle. *Id.* at ¶ 32. Plaintiff opened his driver-side door, and "Defendant Wiser shined a bright flashlight into Plaintiff's eyes[.]" *Id.* at ¶¶ 33–34. Plaintiff immediately protested, directing Defendant Wiser "to get the light out of his eyes and out of his vehicle." *Id.* at ¶ 34. Defendant Wiser asked for Plaintiff's license, registration, and proof of insurance. *Id.* at ¶ 35. Plaintiff complied with the request, and Defendant Wiser returned to her vehicle. *Id.* at ¶¶ 36–37. Defendant Wiser returned to Plaintiff's car and asked Plaintiff to participate in a field sobriety test. *Id.* at ¶¶ 38–39. Plaintiff refused, telling Defendant Wiser "that he had had as much alcohol to drink as she had and that he would not do the side show on the side of the street but that if she wanted to do so she could." *Id.* at ¶ 39. Defendant Wiser ordered Plaintiff out of the car and arrested Plaintiff, handcuffing "him behind the back." *Id.* at ¶¶ 40–43. Defendant Wiser gave Plaintiff a partial *Miranda* warning, and

then Defendants Wiser and Doe physically searched Plaintiff's person. *Id.* at ¶¶ 44–46. Defendant Wiser then "searched [P]laintiff's car without his consent" and "caused a tow truck to seize [P]laintiff's car." *Id.* at ¶¶ 48–49.

Defendant Wiser took Plaintiff to the Lane County Jail and directed Plaintiff to participate in a breath and urine test, to which Plaintiff complied: Both tests came back negative for alcohol or any other controlled substances or pharmaceuticals. *Id.* at ¶¶ 56–61. Defendant Wiser cited Plaintiff for reckless driving and DUI. *Id.* at ¶¶ 62–63; *Id.* Exs. 0–1. When Plaintiff appeared in court, he discovered that the district attorney had decided not to file charges against him. *Id.* at ¶¶ 73–75. As a result of the arrest, Plaintiff paid at least $785 and lost the opportunity to work, costing him lost income. *Id.* at ¶¶ 80–81. Plaintiff also alleges that he suffered from physical pain, mental suffering, fear, grief, anxiety, flashbacks, embarrassment, and degradation. *Id.* at ¶ 82.

## **LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under *Twombly*, courts assess a plaintiff's claims from a two-step approach. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court must strike out any legal conclusions, including "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* Second, the Court must determine whether the remaining factual allegations state a plausible claim for relief. *Id.* This is a context-specific task, requiring the Court "to draw on its judicial experience and common sense." *Id.* at 679. To establish plausibility, the well-pleaded facts must allow for "the court to infer more than the mere possibility of misconduct"—they must "allow[] the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* at 678–79. Additionally, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Finally, besides demanding plausibility, the pleading standards also require the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## DISCUSSION

### I. Plaintiff's Theory

Although far from clear in his Amended Complaint, Plaintiff's theory centers on what plausibly could be characterized at this early stage in the pleadings as retaliatory conduct on the part of the Defendants. Plaintiff suggests that, although Defendants Wiser and Doe determined that he was not impaired following a questionable traffic stop, they decided to cite him anyway, for no other reason than they believed that he was acting like a jerk towards law enforcement. Accepting this theory, Plaintiff has illustrated that Defendants plausibly lacked reasonable suspicion to initiate the traffic stop, lacked probable cause to search and seize his vehicle, lacked probable cause to arrest Plaintiff, and were at least motivated in part by retaliatory animus, as explained below.

### II. Section 1983 Claims

Plaintiff brings multiple section 1983 claims, including a *Monell* claim, against Defendants. Section 1983 claims require "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Benavidez v. Cnty. of S. D.*, 993 F.3d 1134, 1144 (9th Cir.

4

2021). Here, only the first element—whether Defendants violated Plaintiff's constitutional rights—is at issue.

### A. Unreasonable Seizure of a Person

Plaintiff's first 1983 claim alleges that Defendants Wiser and Doe violated his Fourth Amendment right against unreasonable searches and seizures first when they pulled him over without reasonable suspicion, and again when they arrested him without probable cause. Am. Compl. at ¶¶ 103, 107–08. At this early stage, each are well-pled.

#### i. Traffic Stop

Plaintiff has plausibly alleged that Defendants Wiser and Doe initiated a traffic stop against Plaintiff without reasonable suspicion, in violation of the Fourth Amendment. The Ninth Circuit has explained that for a traffic stop to comply with the Fourth Amendment, there must be reasonable suspicion. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104–05 (9th Cir. 2000). "Reasonable suspicion 'exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion'" of criminal activity. *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015) (quoting *United States v. Montero–Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc)). Reasonable suspicion requires "less than probable cause or a preponderance of the evidence"—but a "mere hunch" is insufficient. *United States v. Steinman*, 130 F.4th 693, 709 (9th Cir. 2025) (citations omitted). In evaluating the validity of a traffic stop, a court must "consider the totality of the circumstances." *Thomas v. Dillard*, 818 F.3d 864, 876 (9th Cir. 2016); *See also Navarette v. Cal.*, 572 U.S. 393, 397 (2014); *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Here, Plaintiff plausibly alleges that Defendants Wiser and Doe lacked reasonable suspicion when they initiated the traffic stop. Plaintiff alleges that he "turned the steering wheel

5

slightly and then straightened out the vehicle in order to gauge the traction of the vehicle." Am. Compl. at ¶ 18. Defendant characterizes this as "swerving" and argues that Defendants' perception of the event was a sufficient basis for reasonable suspicion that Plaintiff either committed a traffic violation or was impaired. Defs.' Mot. Dismiss at 6. However, at this stage, the Court must view the facts not as Defendants describe them, but as they are alleged in the Amended Complaint. The Amended Complaint merely describes Plaintiff turning the wheel and then straightening out the vehicle, purportedly to gauge its traction in the snow. Plaintiff does not allege anything indicating that he drove in a reckless manner or was about to commit a crime or traffic violation. In fact, there are no allegations indicating that Defendants witnessed Plaintiff "straighten[ing] out the vehicle." Absent any indication that Plaintiff even crossed into another lane or gave Defendants any reason to think Plaintiff had broken any traffic law, Plaintiff's claim that Defendants lacked reasonable suspicion to initiate a traffic stop is plausible.[1]

### ii. Arrest

Plaintiff plausibly alleges that Defendant Wiser arrested him without probable cause, in violation of the Fourth Amendment. "Probable cause to arrest exists if officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Rodis v. City & Cnty. of S.F.*, 558 F.3d 964, 969 (9th Cir. 2009) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)). The events as described in the Amended Complaint would not lead a reasonable person to believe that Plaintiff had committed any offense. All relevant events and

---

[1] The Court understands that "[t]he reasonable suspicion standard is not a particularly high threshold to reach." *Steinman*, 130 F.4th at 709 (cleaned up). At this stage, however, Plaintiff controls what allegations to include in, or omit from, the Complaint. While the Court can envision numerous minor traffic violations that could provide Defendants with reasonable suspicion necessary to initiate the traffic stop, Plaintiff includes no such facts in his Amended Complaint.

6

circumstances for a probable cause determination are as follows: It was around 2:00 A.M. with snow on the ground; Plaintiff had "turned the steering wheel slightly and then straightened out the vehicle"; Plaintiff had been instructed to move his vehicle forward since he had stopped in front of a driveway, to which he obliged; Plaintiff protested when Defendant Wiser shined a light into Plaintiff's eyes; and Plaintiff declined to perform a field sobriety test. Am. Compl. at ¶¶ 14, 17–18, 29–31, 34, 38–39.

Defendants argue that the only reasonable inference allowed from each event and circumstance described above points to Plaintiff having been under the influence and thus provided Defendants with probable cause to arrest Plaintiff for DUI. Defs.' Mot. Dismiss at 4–5. The Court agrees that facts like the time of night, an apparent state of agitation, having to be instructed to pull forward, etc., may contribute to an officer's reasonable inference of intoxication. But here, there are no overt indicators of intoxication as seen in other cases that would allow for a reasonable inference of probable cause, such as the smell of alcohol, slurred speech, or other behaviors strongly correlative of intoxication. *See e.g., Burgett v. Sanborn*, 2015 WL 4644619 at *4 (D. Or. May 14, 2015) (finding that plaintiff's admission of drinking, smell of alcohol, having to be asked to remove his license from his wallet, exhibiting four out of the six validated clues to impairment on the horizontal gaze nytugmus test, and failing a field sobriety test were sufficient for a finding of probable cause for DUI); *see also Devermont v. City of Santa Monica*, 2014 WL 2969629 *4 (C.D. Cal. July 1, 2014) (finding that plaintiff's illegal right turn on red, failure to pull over more quickly, and refusal to perform a field sobriety test, in light of no physical indications of intoxication, were insufficient for a finding of probable cause on summary judgment); *Thompsen v. Breshears*, 2009 WL 2581556 *7 (E.D. Wash. Aug. 14, 2009) (finding that "Plaintiff's fumbling with the registration, having blood shot and dilated eyes, and

7

[] traffic violations, including the fact that after Plaintiff was stopped, she pulled to the side of the road with both right tires on the sidewalk and parked directly in front of a marked fire lane" were barely sufficient for reasonable suspicion required to conduct a field sobriety test).

Without an overt indicator of intoxication, Plaintiff's behavior and general countenance of agitation, at least at this stage, are plausibly consistent with Plaintiff's general theory that: (1) this was a sham stop conducted under the assumption that someone driving at 2:00 AM may be impaired; (2) after pulling Plaintiff over, Defendant Wiser quickly realized that Plaintiff was not impaired; (3) Defendant Wiser did not like Plaintiff's attitude during the stop; and (4) Defendant Wiser arrested Plaintiff merely to teach him a lesson (rather than on a genuine suspicion that Plaintiff violated a traffic law or drove while intoxicated). Given that Plaintiff passed a drug test and blew a 0.00 BAC after his arrest, it is at least plausible that Defendant Wiser did not have enough information to support a reasonable belief that Plaintiff was driving under the influence. Defendants must dispute this allegation with facts more typically developed in a Motion for Summary Judgement.

### B. Unreasonable Search and Seizure of Property

Plaintiff's third section 1983 claim alleges unreasonable search and seizure of property against Defendants Wiser and Doe, invoking Amendments IV and V.[2] Am. Compl. at 16. At issue here is whether Plaintiff's car was unlawfully searched and seized. In the absence of a warrant, a vehicle may be searched or seized if there is probable cause that the vehicle contains evidence of a crime. *Steinman*, 130 F.4th at 711. In the context of searches and seizures, "[p]robable cause exists when, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *United*

---

[2] Although Plaintiff lists the Fifth Amendment, he has made no allegations invoking a Fifth Amendment right either in the Amended Complaint or Response.

8

*States v. Rodgers*, 656 F.3d 1023, 1028 (9th Cir. 2011)).

As demonstrated above, Plaintiff has plausibly alleged that Defendants lacked not only reasonable suspicion to pull him over initially, but probable cause to arrest Plaintiff. At this stage, there are no allegations that would lead the officers to believe Plaintiff's vehicle would contain contraband or evidence of any crime.

Defendants offer two arguments for why the search and seizure of the car was lawful, to no avail. Defendant's first argument is that the search was "justified as a search incident to arrest" under *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Defs.' Mot. Dismiss at 9. However, the *Gant* framework presupposes that the arrest is lawful. *Gant*, 556 U.S. at 338. As described above, the Amended Complaint plausibly alleges that Plaintiff's arrest was unlawful.

Defendants argue alternatively that the search was justified under the community caretaking doctrine, in which "police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." Defs.' Mot. Dismiss at 9–10 (cleaned up) (quoting *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005). However, there are no factual allegations in the Amended Complaint suggesting that Plaintiff's car was jeopardizing public safety or the efficient movement of traffic.

Because the Amended Complaint plausibly alleges that Defendants' warrantless search and seizure of Plaintiff's vehicle was unlawful, Defendants' Motion to Dismiss Plaintiff's third claim is DENIED.

### C. Retaliation for Exercising First Amendment Rights

Plaintiff's second 1983 claim alleges that Defendant Wiser retaliated against Plaintiff for protesting the unlawful stop, in violation of Plaintiff's First Amendment rights. Am. Compl. at 14. To bring a First Amendment claim under section 1983, Plaintiff must allege the following:

(1) [he] engaged in constitutionally protected activity; (2) the

9

> defendant's actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech.

*Arizona Students' Assoc. v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quoting *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016)).

At this stage, there is no dispute that Plaintiff was engaged in constitutionally protected activity in two instances: first, when he told Defendant Wiser to "stop shining a light in his eyes and in his vehicle" and second, when he told Defendant Wiser "as much as you" in response to Defendant Wiser's question of how much he had had to drink.

The second and third elements are well-pled. For the second element, a court assesses from an objective standard whether a defendant's actions "would 'chill a person of ordinary firmness' from engaging in [constitutionally] protected activities"—the inquiry is not whether the plaintiff was actually chilled. *O'Brien*, 818 F.3d at 933 (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). The third element endeavors a court to ask whether "the protected activity was a substantial or motivating factor in the defendant's conduct." *Id.* at 932 (quoting *Pinard*, 467 F.3d at 770).

Defendant essentially makes two arguments for why neither element was sufficiently pled: First, deputy Wiser was motivated by observable evidence of a DUI, so she lacked a retaliatory animus; and second, Plaintiff has failed to offer specific factual allegations establishing either element. Defs.' Mot. Dismiss at 7–8. Defendants' first argument is predicated on the plausibility of Defendant Wiser's conduct having been lawful, which, as discussed above, the Court finds unpersuasive at this stage. Plaintiff's retaliation claim depends on the theory that despite recognizing that Plaintiff was not impaired, Defendant Wiser arrested Plaintiff anyway,

essentially to teach Plaintiff not to talk back to officers during a traffic stop. Regarding Defendants' second argument, although the Amended Complaint is an ocean of legal conclusions and formulaic recitations, there are enough islands of factual allegations to establish both elements.

For the second element, Plaintiff has offered sufficient factual allegations to reasonably infer that Defendant Wiser's actions would chill a person of reasonable firmness. Without legal authority, she arrested Plaintiff, towed his car—which cost him hundreds of dollars—caused Plaintiff lost income, and caused Plaintiff to have to go to court, in addition to all the accompanying mental stress. These actions would chill a reasonable person from protesting a traffic stop in the future. For the third element, there are sufficient factual allegations to reasonably infer that Defendant Wiser was motivated by a retaliatory animus. Given the lack of reasonable suspicion and probable cause, and with no other explanations found in the Amended Complaint, the Court is left to infer that Defendant Wiser's arrest of Plaintiff was motivated at least in part to retaliate against Plaintiff's verbal protests against the unlawful traffic stop.

### D. *Monell* Liability

Plaintiff's fourth 1983 claim alleges *Monell* liability against Defendant Lane County. Am. Compl. at 16. In a *Monell* claim, "a local government may be liable for constitutional torts committed by its officials according to municipal policy, practice, or custom." *Weiner v. S. D. Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (citing *Monell v. Dept. of Social Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978)). In order to impose *Monell* liability, a plaintiff must show: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By and*

*Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)). Regarding the second element, in the absence of an official "policy," *Monell* liability may also be established on the basis of a longstanding and persuasive custom; an omission amounting to deliberate indifference; or through an official's ratification of a subordinate's unconstitutional action, where that official has final policy-making authority. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Here, Plaintiff fails to allege that Lane County had any policy or custom leading to the Constitutional violations. Plaintiff also fails to allege that any final decision-maker ratified Defendant Wiser's actions. Instead, Plaintiff's allegations related to municipal liability consist merely of conclusory statements absent specific factual allegations plausibly suggesting an entitlement to relief.

Regarding Plaintiff's policy theory, Plaintiff alleges that "[u]pon information and belief, the written policy on the investigation of reckless driving and driving under the influence of intoxicants was deficient on its face." Am. Compl. at ¶ 130. Specifically, Plaintiff alleges that the policy is deficient because it fails to adequately train staff on how to recognize reckless driving or DUI, it fails to establish proper protocols for how to investigate reckless driving or DUI, it fails to address how to investigate reckless driving or DUI in wet or icy conditions, and it fails to prevent violations of law by employees. *Id.* at ¶¶ 130–131, 134. The problem, of course, is that Plaintiff fails to point to any actual policy and, instead, simply presumes that a policy exists and then presumes that the policy must be deficient.

Plaintiff's theory of custom is simply that "there was a de facto custom" of allowing employees to fabricate reasonable suspicion and probable cause, and of not ensuring that deputies would follow proper procedure. *Id.* at ¶¶ 132–133. Plaintiff's theory of omission is simply that "Lane County was deliberately indifferent to the substantial risk that its policies were

12

inadequate to prevent violations of law by its employees," and deliberately indifferent towards "the known or obvious consequences of its failure to train its officers and employees adequately." *Id.* at ¶ 135. Plaintiff's theory of ratification is that Sheriff Harrold "and the other policymaker defendants, who had final policymaker authority" ratified the conduct of Defendants Wiser and Doe, "in that they knew of and specifically approved of the conduct[.]" *Id.* at ¶ 138. None of those allegations, however, are specific factual allegations entitled to a presumption of truth.

The primary issue with all of Plaintiff's *Monell* theories is that they lack the necessary factual support to establish plausibility. Plaintiff offers only conclusory statements which amount to little more than speculation. Even assuming that the individual Defendants violated Plaintiff's Constitutional rights, mere employment of a tortfeasor is insufficient for municipal liability. *Monell*, 436 U.S. at 691 ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143–44 (9th Cir. 2012) (noting heightened pleading requirements for *Monell* claims "are necessary to avoid imposing respondeat superior liability" because "when a municipal employee commits a tort, it could always be alleged that the municipality failed to enact a policy that would have prevented the tort."). Although Plaintiff tries to skirt around this requirement by generally alleging "cumulative and persistent failures and misdeeds of the entire police department," Plaintiff provides no specific, factual allegations of a series of similar misdeeds, let alone one single other misdeed. *See* Am. Compl. at ¶ 136.

For Plaintiff's ratification theory, it is insufficient to baldly conclude that the Sheriff Harrold "knew of and specifically approved" of Defendants' conduct. Something more must be offered to substantiate what is otherwise a factually untethered conclusion. *Id.* at ¶ 138.

13

Because Plaintiff's conclusory statements fail to allege the existence of a policy, custom, omission, or ratification of unconstitutional conduct giving rise to Plaintiff's injuries, Plaintiff fails to state a *Monnel* claim.

### III. State Law Claims

Plaintiff also brings state law claims of assault, battery, false imprisonment, and negligence, each against "all Defendants." *Id.* at 19–20. Although somewhat inartful, enough facts are mustered for some claims to meet the pleading requirements. In reaching this conclusion, the Court assumes, as discussed above, that Defendant Wiser lacked: (1) reasonable suspicion to pull Plaintiff over; and (2) probable cause to arrest Plaintiff. If, however, discovery reveals that Defendant Wiser had probable cause to arrest Plaintiff, Plaintiff's state-law claims may be barred. *See Farris v. Culp*, No. 20-CV-00290, 645 F. Supp. 3d 1058 (E.D. Wa. 2022) (noting that plaintiff's state claims for false arrest, false imprisonment, and malicious prosecution related to her arrest and prosecution for DUI failed because "the existence of probable cause is a complete defense to all" of those claims).

#### A. Assault

Plaintiff's assault claim fails to meet the pleading standard because it fails to give fair notice to Defendants of what the grounds are for the claim. In Oregon, an assault occurs when "(1) a person acts, intending to either; (2) cause harmful or offensive contact with another person or to cause another person apprehension of imminent harmful or offensive contact with that other person; and (3) the other person reasonably believes a harmful or offensive contact would occur. *Underwood v. City of Portland*, 319 Or. App. 648, 656 (2022) (emphasis omitted) (citing *Cook v. Kinzua Pine Mills Co. et al*, 207 Or. 34, 47 (1956); *Restatement (Second) of Torts* § 21 (1965)). Plaintiff's allegations merely recite these elements, aiding neither the Court nor the

Defendants in understanding which actions constitute assault. *See* Am. Compl. at ¶¶ 139–144. There are numerous possibilities to be found in the general allegations, each of which seemingly involve only Defendant Wiser: the aggressive tailgating, shining the light in Plaintiff's eyes, or perhaps something that occurred when Plaintiff was taken into custody. Because it isn't clear which of these, either individually or in aggregate (or something else altogether), Plaintiff is choosing to pursue, Plaintiff's assault claim fails to give fair notice of the grounds upon which it rests.

### B. Battery and False Imprisonment

Plaintiff also brings Battery and False Imprisonment claims. A battery occurs when "(1) a person act[s] with intent to cause harmful or offensive contact with another person, and (2) those actions directly or indirectly cause a harmful or offensive contact with that other person." *Underwood*, 319 Or. App. at 656–57 (citing *Bakker v. Baza'r, Inc.*, 275 Or. 245, 249 (1976); *Restatement* §§ 13, 18)). False Imprisonment occurs when "(1) the defendant confined the plaintiff; (2) the defendant intended the act of confinement; (3) the plaintiff was aware of being confined; and (4) the confinement was unlawful." *Cruz v. Multnomah Cnty.*, 279 Or. App. 1, 5 n.4 (2016) (citing *Fossen v. Clackamas Cnty.*, 271 Or. App. 842, 847 (2015)).

Based on the general allegations, the Court infers that Defendant Wiser plausibly committed battery when she handcuffed and arrested Plaintiff, and plausibly committed the tort of false imprisonment when she initiated a traffic stop without reasonable suspicion and arrested Plaintiff without probable cause. The allegations are less clear with respect to Defendant Doe. Plaintiff merely alleges that Defendant Doe "failed to intercede to stop the illegal arrest." At this pre-discovery stage in the litigation, it is unclear whether Defendant Doe had a meaningful role in the arrest or whether they were aiding and abetting Defendant Wiser in the alleged

15

misconduct. The court is not willing to dismiss at this stage without an opportunity for the Plaintiff to discover what role Defendant Doe played in the arrest.

### C. Negligence

Plaintiff fails to offer a coherent theory of negligence, as Plaintiff only alleges intentional conduct by Defendants. For a negligence claim, a plaintiff must plead:

> (1) that [the] defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that [the] defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of [the] plaintiff's harm, and (5) that [the] plaintiff was within the class of persons and [the] plaintiff's injury was within the general type of potential incidents and injuries that made [the] defendant's conduct negligent.

*Piazza ex rel. Piazza v. Kellim*, 271 Or.App. 490, 516 (2015) (alterations in original) (quoting *Stewart v. Kids Incorporated of Dallas, OR*, 245 Or.App. 267, 268 (2011)).

Plaintiff identifies the harms at risk and a relationship between the parties but fails to offer anything more than legal conclusions addressing the foreseeability of the risk, that the risk of harm was protected by law, that Defendants' conduct was unreasonable, and that Defendants were the actual and proximate cause of the harm. *See* Am. Compl. at ¶¶ 160–68. Looking towards the general allegations to fill in these gaps, Plaintiff has only alleged intentional conduct by Defendants, which, as Defendants note, cannot support a theory of negligence. *See Kasnick v. Cooke*, 116 Or. App. 580, 583 (1992) (supporting the proposition that conduct which can only be perceived as intentional, such as a fist fight, cannot "as a matter of law and fact," be negligent.).

In fact, the allegations appear to the Court to relate only to intentional actions on the part of Defendant Wiser. Plaintiff alleges that Defendant Wiser *intentionally* initiated a traffic stop despite *knowing* that she lacked reasonable suspicion. Then, upon learning that Plaintiff was not under the influence, Defendant Wiser *intentionally* set out to retaliate against Plaintiff—

16

essentially for talking back during the stop—by citing and arresting Plaintiff despite *knowing* that she lacked probable cause to do so. None of these allegations are consistent with any negligent act by Defendant Wiser. Additionally, if Defendant Wiser was merely incorrect that Plaintiff: (1) crossed a lane line or drove recklessly; or (2) was under the influence, it appears that she would be immune to Plaintiff's negligence claim. *Dickerson v. City of Portland*, No. 3:19-01126, 2020 WL 7391267, at * 9 (D. Or. 2020) (listing District of Oregon cases barring negligence claims "when the negligence claim is based on the same operative facts as the Section 1983 claim" and concluding that because the "the officers had probable cause to arrest Dickerson, Dickerson may not maintain a separate negligence claim."); Or. Rev. St. 30.265(6)(c) ("Every public body and its officers, employees and agents acting within the scope of their employment or duties . . . are immune from liability for [a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."); Or. Rev. St. 133.315(1) (noting no officer may be held "civilly liable for making an arrest . . . provided the peace officer acts in good faith and without malice.").

The Court recognizes that a plaintiff may plead inconsistent but alternative claims for relief. *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Although Plaintiff is not precluded from alleging a theory of negligence merely because he has alleged intentional conduct, his negligence theory lacks any alleged facts to stand on. As such, Plaintiff is granted leave to amend to allege alternative facts from which a plausible theory of negligence can be reasonably inferred.

### IV. Qualified Immunity

Defendants contend that they are entitled to qualified immunity, which would preclude

17

Plaintiff from obtaining relief. Defs.' Mot. Dismiss at 16. Qualified immunity "shields Government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights[.]'" *Iqbal*, 556 U.S. at 672 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal citations omitted). Accepting Plaintiff's theory as true, Defendants are not entitled to qualified immunity. No reasonable officer would believe, under the facts as alleged, that such intentional acts of malevolence following a traffic stop were lawful.

## **CONCLUSION**

Defendants' Motion to Dismiss, ECF No. 10, is GRANTED in part. Plaintiff's fourth claim, alleging *Monell* liability, fifth claim, for Assault, and eighth claim, for Negligence, are DISMISSED. Plaintiff is granted 30 days to file an amended complaint, if he chooses, to address the deficiencies with respect to those three claims.

IT IS SO ORDERED.

DATED this  8th   day of December, 2025.

                                               /s/Michael McShane
                                                 Michael McShane
                                         United States District Judge